Haack, Special Administrator, Respondent, vs. Hall and wife, Appellants.*

*September 11—October 16, 1945.*

* Motion for rehearing denied, with $25 costs, on December 4, 1945.

*Anna Mae Davis* of Madison, for the appellants.

For the respondent there was a brief by *Field & Rikkers* of Madison, and oral argument by *Edward H. Rikkers.*

Wickhem, J. The first and principal question argued upon this appeal is whether the findings are against the great weight and clear preponderance of the evidence, and this necessitates a brief review of the facts.

Gustave Haack, a widower, died on September 23, 1941, at the home of his daughter, Marie Hall. He left surviving him two daughters, Marie and Elizabeth (incompetent), two sons, Frank and Raymond, and the children of a deceased son, Louis. On June 30, 1941, Haack executed a deed by which he disposed of the title to a small house in the city of Madison to Marie Hall, subject to the condition that she permit him to live and make his home on the premises and pay the taxes, insurance, and upkeep on the property during his life. A will executed on July 7, 1941, gave the rest of Haack's estate, which comprised a $3,000 balance due Haack on land contract and certain sums of money in the bank, to the two living sons, Raymond and Frank, except for bequests in small amounts to Elizabeth and to the children of the deceased son, Louis.

Haack had been active until shortly before his death, having been variously a carpenter, proprietor of a grocery store, and the operator of a truck farm. Three years after his wife's death in 1938, he moved to Madison and took a room where he lived alone. Shortly thereafter he had an operation to relieve an enlarged prostate. As soon as he was discharged from the hospital on May 30, 1941, he went to live at the home of his daughter, Marie Hall, who resided with her husband and four children under somewhat crowded

conditions. According to defendants' evidence, Haack proposed about the 1st of June, 1941, that he convey the house involved in this case to Marie, and that the premises be so remodeled that he could have a room on the first floor and live in greater comfort. Marie and her father went to the office of a real-estate broker on the day when the deed was executed, and asked to have the deed executed. It is disputed whether the husband was present. The broker advised them to see a lawyer and they went to the offices of Virgil Roick. According to Mr. Roick, Mr. Haack came in first and explained that he wanted to deed the property to his daughter with whom he was going to make his home, and he proposed to dispose of his other property by will. Marie Hall was present at the time, but took no part in the discussion. According to Mr. Roick, Mr. Haack preferred to deed the house to his daughter, subject to his right to live there during the rest of his life, and then to dispose of the rest of his property by a will which would exclude Marie. Mr. Roick made notes and then asked Mrs. Hall to leave. He then had an interview with Haack in which he explained the legal situation to him, advising him that a contract for support was preferable to a deed. According to Mr. Roick, Haack preferred the deed. He also gave instructions for the will. The deed was then drawn and executed. The will was executed later, although prepared from the instructions referred to above. Mr. Roick testified that there was no question as to Haack's mental competency, although he was not physically strong.

On August 8, 1941, the Halls and Haack moved to the home conveyed by the deed. Defendants' testimony is to the effect that his health improved for a period after he made this move. Haack became ill in the middle of September, 1941, and about that time signed an authorization to Marie to withdraw funds from his savings account. No money was drawn under this authorization until after Haack's death

on September 23d. On this day Marie and her husband went at once to the bank, drew the balance of his funds by use of the authorization, applied these sums to funeral expenses and kept $246 for her own purposes. She claims to have repaid this in later years by paying for cemetery care and flowers.

Plaintiff produced evidence to the effect that after the operation Mr. Haack's health steadily failed; that extensive repairs were made to the house at the sole expense of Mr. Haack, and in violation of the terms of the deed; that after Mr. Haack's death the Halls did not call the brothers for nearly five hours after his death, and that in the meantime they had used the authorization and exhausted the bank account; that Marie did not inform the officials of the bank at this time that her father was dead; that nearly $300 of the amount taken from the bank was applied to Marie's personal benefit; that there was no disclosure by Marie until a week after her father's death that she had received the deed to her father's home; that the Halls came into the possession of, and claimed all of Gustave Haack's carpenter tools, as well as two guns owned by decedent. The will of the decedent has not yet been probated, although it has been offered for probate.

We have concluded that the preponderance of the evidence is against a finding of undue influence in the procurement of the deed. Outside of the fact that Haack was slightly over seventy-four years of age and had recently had an operation which somewhat impaired his physical health, there is no evidence to show that he was a person subject to undue influence. The testimony of Mr. Roick, a reputable attorney, indicates that he was intelligent and sufficiently positive in his notions as to what he wanted to do to reject the suggestions and advice of Mr. Roick. There is literally no evidence of any influence exerted by the Halls prior to, or contemporaneous with the execution of the deed. Further

than this, the whole scheme of the grantor appears to have been a reasonable and natural one.   True, the house represented a somewhat larger portion of the estate than the brothers would receive, but he reserved the right to live there during his life, and there was nothing to indicate that he might not live several years.   The scheme of deeding the property to the daughter and willing the balance to the sons was a natural disposal of his property, and does not indicate undue influence by anybody.   The opportunity of the Halls to exercise undue influence existed, as it usually does in undue-influence cases, but the preponderance of the evidence is against a finding that Marie Hall and her husband were disposed to exercise undue influence. , The only evidence that could be claimed to show this has to do with the improper use by them after the grantor's death of an authorization to draw money at the bank for his convenience during his illness.   We agree with the trial court and jury that this may have shown a grasping disposition on the part of the Halls, or a willingness to diminish by a small amount the portion of the estate that was left by will to the brothers.   It seems to us, however, that in spite of the short period involved, this conduct cannot be so related back to the time of the execution of the deed as to supply clear and satisfactory evidence of undue influence in that transaction.   The impulse to misuse the funds may have occurred only after grantor's death.   Indeed, the purpose may have been to pay funeral expenses and the idea of converting the balance may have occurred later.

We conclude, therefore, that the evidence does not sustain the findings of the trial court and the verdict of the jury that the deed was obtained by undue influence.   That this view concurs with those of the trial court, except as affected by the findings of the jury, is indicated by the memorandum decision filed.   The trial court, however, yielded to the findings of an advisory jury because of the conclusion that there

was evidence to sustain these findings. In view of our conclusion that the findings are against the great weight and clear preponderance of the evidence, the judgment must be set aside in so far as it affects the conveyance of the real estate to defendants.

With respect to the authorization, the issue of undue influence was wholly immaterial. Haack was sick; the authorization was given to draw money for his personal use since he could not go to the bank and was not given for the purpose of benefiting the Halls in any respect. What happened was that the Halls used the authorization after its expiration and for purposes other than those for which it was issued. The Halls would be in precisely the same position whether the authorization was valid at the outset or not. They misused an expired authorization to get possession of cash belonging to Haack's estate in the sum of $600. Whether they were guilty of obtaining the authorization by undue influence or not they must pay this amount back to the estate. While it might have been proper to enter judgment for $600 against the Halls and relegate them to filing a claim in county court for any portion laid out for the benefit of the estate, no objection is here made to permitting judgment for the difference between the amount taken from the bank and that actually paid out in discharge of claims against the estate. Hence, we see no reason for disturbing this portion of the judgment.

It follows that the judgment must be reversed in so far as it sets aside the deed to Marie Hall and affirmed as to the money judgment against the Halls for the sums drawn under the authorization.

*By the Court.*—Judgment reversed in part and affirmed in part as indicated in the opinion, and cause remanded with directions to enter judgment in accordance with the opinion, appellant to have costs upon this appeal.